UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMES SEELEY,

         Plaintiff,

   -vs-


DR. SANDRA BOEHLERT, et al.,

         Defendants.

_____

**No. 6:10-CV-6570(MAT)**
**DECISION AND ORDER**

## I.   Introduction

James Seeley ("Plaintiff"), proceeding <u>pro</u> <u>se</u>, filed a complaint alleging violations of his constitutional rights while he was an inmate in custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Presently pending before the Court are Plaintiff's Motion to Amend (Dkt #58) and his proposed Second Amended Complaint (Dkt #58-1), which renumbers the original and amended complaints, and adds new defendants and new causes of action. The following individuals are newly named as defendants and have not been served: Dr. DePeria, Dr. Tan, APS Healthcare, Correction Officer ("C.O.") Judith Frazier, C.O. John Castro, C.O. P. Belosky, C.O. Brian Clifford, Deputy Superintendent of Security Gregory Saj ("D.S.S. Saj"), Superintendent Randy James ("Sup't James"), and "Health Services User CHLTTEW". The first ten claims of the Second Amended Complaint (Dkt #58-1) are duplicative of the claims in

the First Amended Complaint (Dkt #24). Claims Eleven through Nineteen in the Second Amended Complaint assert new causes of action.

The defendants who have been served have moved to dismiss all claims in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure ("F.R.C.P.") 12(b) and, in the alternative, have moved for summary judgment pursuant to F.R.C.P. 56. <u>See</u> Dkt #60 (Motion to Dismiss/Motion for Summary Judgment); Dkt #61 (Motion to File Documents Under Seal). Plaintiff has opposed the motion to dismiss. <u>See</u> Dkt #64.

This matter was transferred to the undersigned on August 28, 2013. For the reasons that follow, Defendants' motion to dismiss is granted in its entirety.

## II.  **Factual Background**

Plaintiff's claims may be grouped into three general categories-those that allege deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment, those that allege retaliation for Plaintiff's filing of prison grievances and the instant lawsuit, and one claim that alleges the failure to protect in violation of the Eighth Amendment.

A.    Deliberate Medical Indifference Claims

Following arthroscopic treatment for an ACL injury in 2008, Plaintiff received multiple physical therapy sessions and was given pain medication and medical support devices for chronic knee pain. See Declaration of Colleen Deuel, M.D. ("Deuel Decl."), ¶ 11 (Dkt #60-6). However, he was documented to be non-compliant in his treatment several times, refusing physical therapy and, on occasion, not using crutches as instructed. Id. In March 2010, Plaintiff told Dr. Sandra Boehlert he felt a "ripping" sensation in his right knee and calf, but, according to Plaintiff, she ignored his complaints. (Claim One).

In June 2010, Plaintiff was attending physical therapy for his knee. According to Plaintiff, Dr. Boehlert told the physical therapist, in front of Plaintiff, that he was not going to get any better and would have to live with the knee the way it was. On June 28, 2010, Dr. Boehlert examined Plaintiff's knee and had Plaintiff walk on his heels and toes. Dr. Boehlert found his subjective complaints to be out of proportion to his clinical exam. See Deuel Decl., ¶ 12. Nevertheless, Dr. Boehlert referred Plaintiff to Dr. Deuel for further treatment. (Claim Two).

On August 11, 2010, Dr. Deuel examined Plaintiff; this was her only face-to-face meeting with him. Deuel Decl., ¶ 12. She, too, found Plaintiff's subjective complaints to be out of

-3-

proportion to his clinical exam. Id. Given the history of knee trauma, Dr. Deuel imposed work restrictions to prevent injury and further instructed Plaintiff to return to the clinic if his symptoms worsened or he experienced other problems. Id., ¶ 13. At the time, Plaintiff was taking ibuprofen for occasional discomfort and using a knee brace for support. Id.

According to Plaintiff, Dr. Deuel denied his requests for an MRI, a referral to an orthopedic specialist, and a bottom bunk pass. (Claim Three). Dr. Deuel gave Plaintiff an elastic sleeve to wear while walking to prevent his ankle from rolling.

On September 20, 2010, while Dr. Boehlert was examining Plaintiff in connection with other medical issues, she asked him to squat. Plaintiff states that this was painful to him. (Claim Four).

On October 30, 2010, Plaintiff fell from the bleachers at a basketball game and injured his knee and ankle. Nurse Leone Jenison advised Plaintiff to stay off his leg but, according to Plaintiff, denied him access to crutches until the following day. (Claim Five).

On November 1, 2010, Dr. Boehlert examined Plaintiff and pulled on his foot. According to Plaintiff, Dr. Boehlert stated, "I am more concerned about your buttocks and back than I am about

your knee which I think is only a sprain. Starting today, put your foot down to walk. Do you understand?" (Claim Six).

On December 7, 2010, Dr. Boehlert told Plaintiff he had bone spurs and arthritis which were not severe enough to warrant his use of a cane or require that he obtain a bottom bunk pass. Dr. Boehlert allegedly advised him that when he got older, he would need a cane. (Claim Seven).

On January 18, 2011, Dr. Boehlert ordered an orthopedic consultation and an MRI in connection with Plaintiff's knee issues. The MRI was performed on February 8, 2011, but the orthopedic consultation was denied by APS Healthcare and the Regional Medical Director of the Attica Regional Hub. (Claim Eight).

On July 20, 2010, Superintendent Malcolm Cully ("Sup't Cully") denied Plaintiff's grievance regarding the medical care he had been receiving. Sup't Cully referred the grievance to D.S.S. Saj. (Claim Nine).

On December 22, 2010, Director Pedro Diaz and Dr. Carl Koenigsmann, Chief Medical Officer/Deputy Commissioner of DOCCS, sent Plaintiff a letter stating that the Division of Health Services had investigated Plaintiff's electronic medical record. (Claim Ten).

-5-

In May or June of 2010, Dr. DePeria denied Plaintiff's request for a cane. (Claim Eleven).

In October 2011, according to Plaintiff, Dr. Tan denied his request for a cane, until Plaintiff threatened to name him in a grievance or lawsuit. (Claim Twelve)

On June 2, 2011, Plaintiff asserts, "CHLTTEW [sic] denied [plaintiff] surgery by stating 'No clear criteria with which to approve . . . for RMD review as per MD CCP decision change.'" (Claim Nineteen).

**B.   Retaliation**

To avoid unnecessary repetition, the facts underlying Plaintiff's retaliation claims (Claims Thirteen, Fourteen, Fifteen, Sixteen and Eighteen) will be set forth below, in Section V.C.

**C.   Failure to Protect**

In 2011, Plaintiff asserts, D.S.S. Saj "knew about [Plaintiff's] legal case and medical problems and failed to keep the plaintiff safe from sexual assault and retaliation from his staff." (Claim Seventeen).

**IV.  Exhaustion of Remedies**

**A.   General Legal Principles**

To satisfy the exhaustion requirement set forth in the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, a

New York State inmate is generally required to follow the grievance procedure prescribed in 7 N.Y.C.R.R. § 701.5. The inmate must submit a grievance, within twenty-one days of the relevant occurrence, to the Inmate Grievance Program ("IGP") supervisor. The grievance is then forwarded to the Inmate Grievance Resolution Committee ("IGRC"), which has sixteen days to resolve it informally or to conduct a hearing.

If dissatisfied, the inmate may, within seven days after receipt of the IGRC's determination, appeal to the facility superintendent, who has twenty days to render a decision. The inmate then has another seven days after receiving the superintendent's decision to take the final step, an appeal to the Central Office Review Committee ("CORC"). All three steps of this grievance procedure must be completed before an inmate may commence suit in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("The current exhaustion provision [in the PLRA] differs markedly from its predecessor. Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory.") (citation omitted). A prisoner is not required to affirmatively plead exhaustion of administrative remedies in order to bring an action under 42 U.S.C. § 1983. Jones v. Bock, 549 U.S. 199, 211-12 (2007). Rather, the failure

to exhaust may be raised by a defendant as an affirmative defense. Id.

**B.   Exhaustion Analysis**

**1.   Claims Four, Five, Six, Seven, Eight, Ten, Eleven, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen, and Nineteen**

Defendants argue that Plaintiff did not exhaust his administrative remedies in connection with Claims Four, Five, Six, Seven, Eight, Ten, Eleven, Thirteen, Fifteen, Sixteen, Seventeen, Eighteen, and Nineteen because he failed to utilize DOCCS' established grievance procedure.

Plaintiff asserts that Claims Four, Five, Six, Seven, Eight, and Eleven "were not grieved due to New York State's relation-back doctrine." Plaintiff's Opposition to Summary Judgment ("Pl's Opp.") at 7 (Dkt #64); see also id. at 8, 9. The "relation back" doctrine is relevant to the determination of whether a proposed amendment to a pleading is timely. See Baez v. Kahanowicz, 469 F.Supp.2d 171, 178 (S.D.N.Y. 2007) ("[E]ven if the Court were to eventually find that the amendment relates back to the timely filed complaint and thus is within the statute of limitations, the newly amended complaint would still be barred by plaintiff's failure to exhaust his administrative remedies."). The "relation back" doctrine is irrelevant to the question of whether a litigant has properly exhausted his remedies under 42 U.S.C. §

1997e. The Court thus agrees with Defendants that Four, Five, Six, Seven, Eight, and Eleven are unexhausted.

Plaintiff argues that he properly grieved Claim Ten on December 22, 2010, "when the plaintiff received a letter dated October 7, 2010." Pl's Opp. at 9. This statement does not make sense. In any event, merely "[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought does not constitute proper exhaustion." Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007) (internal quotation marks and citation omitted). A fortiori, Plaintiff's receipt of a letter from an unspecified prison official cannot suffice to exhaust remedies as provided in 7 N.Y.C.R.R. § 701.5. Finally, as Defendants point out, in his initial Complaint, Plaintiff admitted that he did not exhaust his administrative remedies with regard to Claim Ten. The Court agrees with Defendants that Claim Ten likewise remains unexhausted.

With regard to Claims Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen, Plaintiff asserts that these claims "were not grieved because they were retaliatory against the plaintiff for exercising his First Amendment rights for redressing the government by filing this suit and grievance for a statement made [by] defendant Frazier regarding this suit." Pl's Opp. at 11 (citing Giano v. Goord, 250 F.3d 146, 150 (2d Cir.

2001)). The Court agrees with Plaintiff that Claims Thirteen, Fourteen, Fifteen, Sixteen, and Eighteen sound in retaliation and are not claims brought "with respect to prison conditions" for purposes of § 1997e(a). Because these claims "allege individualized retaliatory actions against [Plaintiff], they are not subject to § 1997e(a)'s exhaustion requirement." Giano, 250 F.3d at 150; see also, e.g., Nunez v. Goord, 172 F.Supp.2d 417, 429 (S.D.N.Y. 2001) ("An inmate's claim for particularized instances of retaliation falls outside the purview of § 1997e(a).") (citations omitted).

Claim Seventeen, however, does not allege that D.S.S. Saj engaged in retaliatory actions against Plaintiff. Rather, it asserts that D.S.S. Saj failed to protect Plaintiff from retaliation at the hands of other Defendants. Claim Seventeen thus invokes the Eighth Amendment. E.g., Nunez, 172 F.Supp.2d at 430. District courts in this Circuit have held that similar claims are subject to 1997e(a)'s exhaustion requirement. See Hill v. Tisch, No. 02-CV-3901 (DRH)(MLO), 2009 WL 3698380, at *5 (E.D.N.Y. Oct. 30, 2009) ("Plaintiff alleges that his injuries resulted from the failure of the SCCF defendants to protect him, and there is nothing in the record to suggest that such complaints are not grievable.") (internal citation omitted; citing Toomer v. County of Nassau, No. 07-CV-01495 (JFB)(ETB),

-10-

2009 WL 1269946, at *6 (E.D.N.Y. May 5, 2009) (interpreting identical language to mean that only complaints concerning another inmate's behavior are non-grievable, as opposed to "a grievance against prison officials because of their alleged negligence in failing to protect the plaintiff," which is grievable)). The Court accordingly finds that Claim Seventeen is unexhausted.

### 2.   Claims One, Two, and Twelve

According to Defendants, Plaintiff failed to appeal several grievances to the highest administrative level, the CORC. See 7 N.Y. COMP. CODES R. & REGS. § 701.5(d).

With regard to Claims One and Two, assuming that Plaintiff did file grievances relating to them, he failed to appeal the grievances to the CORC. The records indicate that Plaintiff filed only one grievance in 2010 that he subsequently appealed to the CORC. See Declaration of Cynthia LaCoy ("LaCoy Decl."), ¶ 8 (Dkt #60-4). This grievance, which was titled "Demands to See Specialist", appears to relate to Claims Three and Nine.

With regard to Claim Twelve (denial of a cane in October 2011), the record shows that no grievances pertaining to this incidents was appealed to the CORC. See LaCoy Decl., ¶ 9. The record indicates that the CORC did not receive any appeals of grievances that had been filed by Plaintiff in the first half of

2011. Id. The only grievances filed in October 2011 or later that were appealed to the CORC were entitled "Prompt Attention to Right Jaw" (filed October 20, 2011) and "See Different Doctor" (filed March 8, 2012). Id., ¶ 10. Neither of these grievances pertains to the alleged denial of a cane in October 2011, and thus Claim Twelve was not exhausted.

Because Plaintiff failed to fully complete the exhaustion procedure set forth in the applicable New York State regulations, he did not satisfy the exhaustion requirement as to Claims One, Two, and Twelve.

In sum, Claims One, Two, Four, Five, Six, Seven, Eight, Ten, Eleven, Twelve, and Seventeen were not properly grieved and remain unexhausted. Assuming arguendo that the Second Circuit's line of analysis in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004),[1] has survived Woodford v. Ngo, 548 U.S. 81, 126 S. Ct. 2378, 2387-88 (2006),[2] the Court finds that Plaintiff's

_____

[1]     In Hemphill, the Second Circuit stated that "the court must ask whether administrative remedies were in fact 'available' to the prisoner[,]" 380 F.3d at 686 (citing Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004)), taking into consideration whether the prison provided grievance procedures that inmates could utilize and whether prison officials' threats of reprisal rendered all administrative remedies actually or effectively unavailable. Id. at 686-87. The court also "should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with  administrative procedural requirements.'" Id. (quoting Giano v. Goord, 380 F.3d at 676).

[2]     See Macias v. Zenk, 495 F.3d at 43 n. 1 (declining to decide "what effect Woodford has on Hemphill's holding that where administrative procedures are confusing 'a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter'") (quotation and citation omitted).

situation does not warrant application of any of the Hemphill exceptions to the exhaustion requirement.

The Court finds that Claims Three and Nine have been exhausted. Claims Thirteen, Fourteen, Fifteen, Sixteen, and Eighteen pertain to alleged retaliatory conduct and are not subject to § 1997e's exhaustion requirement.

## IV.  F.R.C.P. 12(b) and F.R.C.P. 56

### A.  Motions to Dismiss Under F.R.C.P. 12(b)(6)

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, (2d Cir. 2007) (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

**B.   Motions for Summary Judgment Under F.R.C.P. 56**

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of showing entitlement to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the burden shifts to the non-movant to identify evidence in the record that creates a genuine issue of material fact. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In determining whether a genuine issue of material fact exists, a court must view the

facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. <u>Lucente v. International Business Machines Corp.</u>, 310 F.3d 243, 253 (2d Cir. 2002) (citation omitted).

## V. Discussion of Claims Three, Nine, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, and Eighteen

### A. Claim Three: Deliberate Medical Indifference by Dr. Deuel

The Eighth Amendment protects prisoners from being subjected to cruel and unusual punishment, including prison officials' deliberate indifference to the prisoners' serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976). To make out such a claim, an inmate must establish that he suffered from a "serious medical need," i.e., " 'a condition of urgency' that may result in 'degeneration' or 'extreme pain,'" <u>Chance v. Armstrong</u>, 143 F.3d 698, 702 (2d Cir. 1998) (quoting <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994)), that the defendant both knew of and disregarded that serious need, <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005), and that in doing so, the defendant had a culpable state of mind and intended wantonly to inflict suffering. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991).

Here, Plaintiff was being treated for knee problems after he felt a "ripping" sensation in his right knee and calf in March 2010. He underwent physical therapy, but in June of 2010, he

informed Dr. Boehlert he was still experiencing pain.
Dr. Boehlert referred him to Dr. Deuel in August of 2010.
Plaintiff takes issue with Dr. Deuel's treatment of him on August
11, 2010, alleging that Dr. Deuel wrongfully denied his requests
to see an orthopedic specialist, to have an MRI of his knee, and
to obtain a bottom bunk pass. Dr. Deuel, however, has submitted a
declaration averring that Plaintiff never made any such requests.
Deuel Decl., ¶¶ 7-9, 14. Dr. Deuel indicates that her standard
practice is to document any particular requests (e.g., specialist
care, a bottom bunk pass, work restrictions) made during an
encounter with a patient. Id., ¶ 8. If Plaintiff had made the
alleged requests, Dr. Deuel would have documented either her
approval or denial, including the reasons why a denial was
justified. Id., ¶ 9.

Even if such requests had been made and denied, Dr. Deuel
could not be found to have acted with a criminally reckless state
of mind in denying Plaintiff necessary treatment for a serious
medical need. Indeed, it is unlikely that Plaintiff can
demonstrate the objective prong of a deliberate indifference
claim, i.e., that he had "'a condition of urgency' that may
result in 'degeneration' or 'extreme pain,'" Chance v. Armstrong,
143 F.3d at 702 (quoting Hathaway v. Coughlin, 37 F.3d 63, 66
(2d Cir. 1994)). Plaintiff's medical records indicate that an x-

ray of his knee was within normal limits. Deuel Decl., ¶ 10. On August 30, 2010, and August 31, 2010, Plaintiff "was observed [by a nurse assigned to the medical unit and a correction officer] walking briskly in the facility without any gait disturbance or limp". Deuel Decl., ¶ 15. This observation was documented in Plaintiff's medical record. Id.

In addition, Plaintiff's records indicate that between August 2010, and January 2011, he "actively participated in recreation programs, including playing and officiating soccer games." Id., ¶ 16. At ten medical call-outs between September and December 2010, Plaintiff did not complain of knee pain or make any request for an orthopedic consult, an MRI, or a bottom bunk pass. Id., ¶ 17. The only occasions on which he mentioned knee discomfort were on December 24, 2010, and January 18, 2011, after he again injured his right knee while officiating a soccer game. Id.

Plaintiff's contention that any of his serious medical needs were wantonly ignored by Dr. Deuel or any of DOCCS' medical staff thus is belied by the factual record. Even applying the generous standard for construing pro se pleadings, and drawing all permissible inferences in Plaintiff's favor, the Court finds that he has not come close to demonstrating malpractice or negligence on Dr. Deuel's part. Such a demonstration would not be sufficient

for him to defeat Defendants' summary judgment motion, as a prisoner's complaint that a medical professional "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. If the record does not support a finding of "mere medical malpractice," Hathaway v. Coughlin, 37 F.3d at 63, "[a] fortiori, it cannot support a finding of deliberate indifference since deliberate indifference requires a level of culpability beyond malpractice." Ramos v. Artuz, No. 00 Civ. 0149(LTS)(HP), 2003 WL 3422347, at *9 (S.D.N.Y. Feb. 14, 2003). In view of the ample evidence that Dr. Deuel provided Plaintiff with care appropriate to his condition, and the absence of evidence that Dr. Deuel departed from accepted medical standards to any degree, Plaintiff's deliberate indifference claim fails as a matter of law.

### B.      Claim Nine: Denial of Grievance by Sup't Cully

In support of Claim Nine, Plaintiff asserts that Sup't Cully wrongfully denied a grievance he filed complaining about inadequate medical treatment. Plaintiff has not alleged any facts against Sup't Cully to show that he personally interfered with or denied Plaintiff any form of medical treatment. It is well-

established that "absent some personal involvement by [the Superintendent of a DOCCS facility] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under Section 1983." Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987). As Defendants argue, this claim fails as a matter of law because Plaintiff cannot demonstrate the requisite personal involvement by Sup't Cully in the alleged constitutional violations. See Joyner v. Greiner, 195 F. Supp.2d 500, 506 (S.D.N.Y. 2002); Abdush-Shahid v. Coughlin, 933 F. Supp. 168, 183 (N.D.N.Y. 1996).

### C.   Claims Thirteen, Fourteen, Fifteen, Sixteen, and Eighteen: Retaliation by Various Defendants

To establish a claim of retaliation, a prisoner must show that his activity was protected by the First Amendment and that the defendants' misconduct was motivated by, and made in response to, this protected activity. Posr v. Court Officer Shield # 207, 180 F.3d 409, 418 (2d Cir.1999). Several factors are involved in determining whether the requisite causal connection exists: (1) the temporal proximity between the plaintiff's protected activity and the defendant's adverse action, (2) the prior disciplinary record of the inmate, (3) the outcomes of any disciplinary hearings regarding the allegedly retaliatory charges, and (4) any statements a defendant makes concerning his motives. Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995).

Courts rightly express a measure of "skepticism and particular care," Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), when evaluating claims of retaliation by inmates. As the Second Circuit has noted, such claims "are prone to abuse since prisoners can claim retaliation for every decision they dislike." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Although the "scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim." Dawes, 239 F.3d at 492-93. Alleged retaliation against a prisoner is actionable only if the complained-of conduct is likely to deter a person of ordinary firmness from continuing to engage in constitutionally protected activity. Id. at 493 (citing Thaddeus-X v. Blatter, 175 F.3d 378, 397 (6th Cir. 1999)). Otherwise, the retaliatory act will be deemed de minimis and not actionable under the First Amendment. Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999)(per curiam).

Plaintiff has alleged that various DOCCS' employees and officials engaged in retaliatory conduct against him, apparently based upon his filing of a grievance against C.O. Frazier and the filing of the instant lawsuit. In particular, Plaintiff asserts that C.O. Frazier filed a false misbehavior report in retaliation

for a grievance filed by Plaintiff against her. Plaintiff states that he received 30 days disciplinary confinement in the Special Housing Unit ("SHU") as a result. In June 2011, C.O. Frazier retaliated against Plaintiff illegally searching his property and issuing a misbehavior report based on her search. Plaintiff received 90 days in SHU. (Claim Thirteen).

In January 2011, Plaintiff alleges, C.O. Castro placed one hand on Plaintiff's back and ran his other hand up and down Plaintiff's thighs and began to rub Plaintiff's penis with his hand. According to Plaintiff, this was done in retaliation for the grievance Plaintiff had filed against C.O. Frazier. (Claim Fourteen).

In June 2011, C.O. P. Belosky conducted a "retaliatory" search of Plaintiff's property. (Claim Fifteen). In June 2011, C.O. Brian Clifford also conducted a "retaliatory" search of Plaintiff's property. (Claim Sixteen).

In 2001, Superintendent Randy James retaliated against Plaintiff by giving punishing him with three days loss of recreation privileges. (Claim Eighteen).

Assuming for the sake of argument that Plaintiff has adequately alleged his engagement in protected activity and his incursion of adverse actions by Defendants, the record is barren of facts tending to show the necessary causal connection between

them. Plaintiff merely has alleged that a number of corrections officers and prison officials made unfavorable decisions or took actions that he did not like. There is no indication that they were animated by a retaliatory intent. Moreover, the instances of allegedly retaliatory conduct, even viewed under an objective standard, are unlikely to have a chilling effect on a person of ordinary firmness, and therefore are not actionable.

**B. Claim Seventeen: Failure to Protect**

Although the Court has found this claim unexhausted, it is easily dismissed on the merits as well. Plaintiff accuses D.S.S. Saj of failing to protect him from "sexual assault and retaliation from his staff." (Claim Seventeen). As discussed above, the Court has found that Plaintiff's retaliation claims fail as a matter of law. D.S.S. Saj cannot be liable for failure to protect Plaintiff from retaliation where the underlying retaliation claims lack merit. Plaintiff's reference to D.S.S. Saj's failure to protect him from "sexual assault" apparently refers to the incident (Claim Fourteen) in which C.O. Castro manually rubbed Plaintiff's penis during a pat-frisk. A "singular incident of groping[,]" Sanders v. Gifford, Civ. No. 9:11-CV-0326 (LEK/RFT), 2011 WL 1792589, at *2 (N.D.N.Y. Apr. 5, 2011), is not objectively serious enough to invoke the protections afforded by the Eighth Amendment. See Boddie v. Schneider, 105 F.3d 857, 860-61 (2d Cir. 1997). D.S.S. Saj cannot be liable for failure to

protect Plaintiff where the underlying incident of sexual misconduct is not actionable under the Eighth Amendment.

## VI.        Conclusion

For the foregoing reasons, Defendants' motion to dismiss or, in the alternative, for summary judgment (Dkt #60) is granted, and Defendants' motion to file Plaintiff's medical records under seal (Dkt #61) is granted. Plaintiff's motion to file a second amended complaint (Dkt #58) is denied. Plaintiff's proposed second amended complaint (Dkt #58-1), first amended complaint (Dkt #24), and original complaint (Dkt #1), are dismissed with prejudice. The Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Decision and Order would not be taken in good faith and therefore denies leave to appeal in forma pauperis. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962). Further requests for in forma pauperis status should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of the Court is requested to close this case.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____
    MICHAEL A. TELESCA
United States District Judge

Dated:     September 5, 2013
           Rochester, New York